UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| TRACY SHOEMAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:14-CV-153 |
| ) | Phillips |
| CONAGRA FOODS, INC., and ) | |
| LIBERTY MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss [Doc. 12] filed by defendant Liberty Life Assurance Company of Boston ("Liberty Life"), incorrectly identified in the complaint as Liberty Mutual Insurance Company.[1] The motion presents a single question of law: whether Liberty Life should be dismissed from this case because it was not plaintiff's "employer" as defined by the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2601, *et seq.* Liberty Life filed a memorandum of law in support of its motion [Doc. 13], plaintiff has responded [Doc. 16], and Liberty Life has replied [Doc. 17]. The Court has carefully reviewed the relevant pleadings and the authorities cited therein, and the motion is ripe for determination.

---

[1] As explained in the defendant's motion [Doc. 12] and supporting memorandum [Doc. 13], the complaint asserts claims against "Liberty Mutual Insurance Company," when the correct party should be "Liberty Life Assurance Company of Boston." The Court will interpret all references to "Liberty Mutual" in the complaint [Doc. 1] as referring to "Liberty Life" and the Clerk will be directed to correct the docket to reflect the appropriate party name.

## I. Relevant Facts[2]

Plaintiff Tracy Shoemaker was employed by defendant ConAgra Foods, Inc. ("ConAgra") for twelve years as a process technician/machine operator at its Cocke County, Tennessee production facility [Doc. 1 at ¶¶ 2, 7]. The complaint describes defendant Liberty Life as "ConAgra's agent and an 'employer' under the FMLA" [*Id.* at p. 1]. The complaint alleges that Liberty Life assisted and cooperated with ConAgra in discharging ConAgra's statutory duties and obligations under the FMLA [*Id.* at ¶ 6]. Although ConAgra described Liberty Life as an FMLA "third party benefits administrator," plaintiff contends that Liberty Life was an agent of ConAgra "whose representations and actions regarding FMLA-approved leaves and entitlements were authorized, controlled, and/or ratified by ConAgra" and that Liberty Life "acted directly in the interests of ConAgra with and to the plaintiff and other ConAgra employees regarding the provisions of the FMLA" [*Id.*].

Ms. Shoemaker's husband has a disability which required that she periodically take FMLA leave to care from him [*Id.* at ¶ 7]. Ms. Shoemaker had to take intermittent FMLA leave almost every year since 2004 to care for her husband [*Id.* at ¶ 8]. Additionally, the physical effort needed to care for her husband frequently aggravated her own back condition and required that she take FMLA leave to recuperate [*Id.*].

---

[2]For the purposes of a motion to dismiss, the Court takes the factual allegations in the complaint [Doc. 1] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

2

In April 2012, Ms. Shoemaker missed work for a back injury she sustained while caring for her husband [*Id*. at ¶ 9]. She requested FMLA leave from April 2 through April 6, 2012, and her chiropractor sent the FMLA certification documents to Liberty Life [*Id*.]. Ms. Shoemaker also turned in her chiropractor's excuses for April 2 to April 4, 2012 and for April 4 to April 6, 2012 to ConAgra's Human Resources office on April 12, 2012 [*Id*.]. The paperwork sent to Liberty Life was misplaced and plaintiff's chiropractor had to resend the FMLA certifications to Liberty Life [*Id*. at ¶ 10]. The second FMLA certification request, however, incorrectly listed the leave dates as April 2 to April 4, 2012 [*Id*.]. Ms. Shoemaker was later informed by Liberty Life that her requested FMLA leave had been approved for April 2 to April 4, but not for April 5, 2012 [*Id*. at ¶ 11]. Plaintiff claims that because her April 5 absence was not approved for FMLA leave, she was improperly penalized with two disciplinary points under ConAgra's attendance policy [*Id*. at ¶ 12].

On June 14 2012, plaintiff discovered she was suspended, apparently due to the number of attendance points she had accumulated [*Id*. at ¶ 18]. Plaintiff contacted Liberty Life and was told that her absence on April 5, 2012 would be covered by FMLA "if ConAgra's Human Resources would accept it" [*Id*.]. When plaintiff met with ConAgra's HR Generalist Eric Wresniewski and HR Manager Dennis Gregg on June 18, 2012, they advised her that ConAgra would not accept Liberty Life's approval of her April 5 absence as FMLA leave because the approval "came after thirty days" [*Id*. at ¶ 20]. At a June 20, 2012 meeting, Messrs. Wresniewski and Gregg again stated that they would not extend FMLA protection to plaintiff's April 5 absence [*Id*. at ¶ 22]. They also

3

refused to "cancel" plaintiff's FMLA approvals for April and allow her chiropractor's certificates to cover the June absences[3] [*Id.*]. Plaintiff was ultimately terminated from ConAgra on July 11, 2012 due to "attendance policy" [*Id.* at ¶ 25].

Plaintiff alleges that Liberty Life "intentionally abdicated its statutory obligation as Ms. Shoemaker's co-employer and/or ConAgra's designated agent for the purposes of designating Ms. Shoemaker's various medically-related and family-care absences for protection by the FMLA" [*Id.* at ¶ 32]. Plaintiff further alleges that Liberty Life was one of her "employers" for purposes of the FMLA and "breached its FMLA duties and obligations which it owed directly to the plaintiff and violated her FMLA entitlement rights [*Id.* at ¶ 33].[4]

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's

---

[3]Paragraph 22 of the complaint states that plaintiff asked that her April FMLA approvals be cancelled and her chiropractor's medical certificates be applied to cover her "April" absences, whereas an earlier paragraph references applying the certificates to her "June" absences [Doc. 1 at ¶ 20]. For clarification, the Court assumes that the reference to "April" absences in paragraph 22 should be to "June" absences, although this distinction is not material to the present motion.
[4]Plaintiff also asserts claims under the FMLA, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act against ConAgra, which are not at issue in the present motion.

4

"obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

### III. <u>Analysis</u>

Liberty Life argues that it was not plaintiff's employer as defined by the FMLA. Rather, Liberty Life was only the third party leave administrator for ConAgra, and therefore plaintiff cannot state an FMLA claim against Liberty Life. Liberty Life asserts that it had no power to control plaintiff's employment and that, even with respect to FMLA leave, ConAgra retained the ultimate decisionmaking authority [Doc. 13 at pp. 5—6]. Liberty Life also notes the cases, all from outside the Sixth Circuit, which have

5

addressed this issue and have concluded that a third party administrator is not an employer under the FMLA [Doc. 13 at p. 7]. Alternatively, Liberty Life argues that it was not a "joint employer" as defined by the FMLA regulations, 29 C.F.R. § 825.106(b)(2), and that plaintiff's conclusory allegations to the contrary are insufficient to overcome the motion to dismiss [*Id.* at pp. 8—11].

Plaintiff's response relies on the portion of the FMLA definition of "employer" as one "who acts, directly or indirectly, the interest of an employer" and argues that Liberty Life acted in the interest of ConAgra "the actual employer" [Doc. 16 at pp. 2—3]. Plaintiff also comments that the fact she "was not on Liberty Mutual's payroll and did not perform work directly for Liberty Mutual … is beside the point" and that the FMLA definition of "employer" creates an "extension of the employer" type of liability applicable to Liberty Life [*Id.* at p. 3]. Plaintiff points out that Liberty Life's decisions regarding her FMLA entitlement led to and motivated her discharge at ConAgra [*Id.* at p. 5]. Thus, her "employment relationship with ConAgra changed for the worse" due to Liberty Life's interference with her FMLA entitlement [*Id.* at p. 7].

In reply, Liberty Life reiterates that it lacked control over plaintiff's employment and therefore cannot be her "employer" as defined by the FMLA [Doc. 17 at pp. 1—2]. Further, Liberty Life argues that both the Department of Labor and courts have concluded that third party administrators are not employers under the FMLA [*Id.* at pp. 3—4]. Regarding plaintiff's reliance on the "acting in the interest of an employer" statutory language, Liberty Life points out that this language has not been interpreted to include

6

third party administrators but rather allows for individual supervisor liability [*Id*. at pp. 4—6].

The FMLA provides eligible employees up to twelve weeks of unpaid leave in any twelve-month period because of the employee's serious medical condition or to care for a family member with a serious medical condition. 29 U.S.C. §§ 2612, 2615 (2009). The FMLA makes it "unlawful for any *employer* to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615 (2009) (emphasis added). The Act defines "employer" as:

> any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year; … include[ing] any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer … .

29 U.S.C. § 2611(4)(A)(i)—(ii)(I) (2009). The Department of Labor regulations interpreting the FMLA repeat the definition of "employer," but also instruct that "[n]ormally the legal entity which employs the employee is the employer under the FMLA." 29 C.F.R. § 825.104(c) (2013).

A careful review of the authorities cited by Liberty Life reveals that the law on this issue is as described. In *Jensen v. AT&T Corp.*, No. 4:06-CV-842(CEJ), 2007 WL 3376893, at *2 (E.D. Mo. Nov. 13, 2007), the court considered whether MetLife, a claims administrator for AT&T's short term disability plan, could be an "employer" of an AT&T employee for purposes of the FMLA. Noting that the "acts directly or indirectly" language in the FMLA is also contained in the Fair Labor Standards Act ("FLSA") definition of employer, 29 U.S.C. § 203(d), the *Jensen* court stated that the test under

7

either statute is "whether the entity 'possessed the power to control the worker in question.'" 2007 WL 3376893, at *2 (quoting *Astudillo v. U.S. News & World Report*, No. 02Civ7902 WHP, 2004 WL 2075179, at *3 (S.D.N.Y. Sept. 17, 2004)). In other words, the plaintiff "must allege that defendant … had some direct power over her employment." *Id*. Because the plaintiff only alleged that Metlife improperly advised AT&T to terminate her employment, the court concluded that she had failed to allege that MetLife was her employer for purposes of the FMLA and granted MetLife's motion to dismiss. *Id*. at *2—3.

The court in *Marshall v. Whirlpool Corp.*, No. 07-CV-534-JHP-TLW, 2010 WL 348344, at *5 (N.D. Ok. Jan. 26, 2010), reached the same conclusion regarding whether UniCare, a third party administrator for Whirlpool's short term disability program, was an employer under the FMLA. After reviewing the FMLA regulation cited above, the court concluded that "it seems clear that Whirlpool, who actually hired and employed the Plaintiff, is the only proper party under the FMLA." *Id*. The court then noted that the "acts directly or indirectly in the interest of an employer" language "has generally been interpreted as establishing liability against individuals such as corporate officers, who, acting in the interest of an employer, violate the requirements of the FMLA."[5] *Id.* Thus, the court held that UniCare was not a proper party under the FMLA and granted the

---

[5]With respect to the "acts directly or indirectly in the interest of the employer" clause, the Court observes that this phrase has been, as noted by the *Marshall* court, generally interpreted as the "individual liability provision" of the definition of employer. *See Mitchell v. Chapman*, 343 F.3d 811, 828 (6th Cir. 2003). The Court need not decide whether this phrase can *only* be interpreted as providing individual liability based on the conclusions that Liberty Life does not otherwise meet the definition of an "employer" and plaintiff is not an "employee" of Liberty Life for purposes of the FMLA.

8

motion to dismiss. *Id*. at *5-6; s*ee Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 479 n.1 (E.D. Pa. 2014) (third-party administrator for FMLA claims was dismissed because plaintiff had not alleged enough facts to show that it was an employer within the FMLA's meaning); *Arango v. Work & Well, Inc.*, 930 F. Supp. 2d 940, 942—43 (N.D. Ill. 2013) (FMLA definition of employer has been interpreted to exclude third-party benefits administrators).

In the present case, plaintiff does not allege that she was "employed by" Liberty Life, nor does she allege that she performed any work for Liberty Life. Her response brief acknowledges that ConAgra was the "actual employer" and that she performed no work "directly for" Liberty Life [Doc. 16 at p. 3]. The complaint contains no allegations that Liberty Life had any control over her hours, salary, job duties, or other conditions of employment. As with the *Marshall* case, the Court concludes that ConAgra actually hired and employed Ms. Shoemaker, and is therefore the only proper defendant under the FMLA.

A parallel argument was made in *Mugno v. Societe Internationale de Telecommunications Aeronautiques, Ltd.*, No. 05-cv-2037, 2007 WL 316572, at *8 (E.D. N.Y. Jan. 30, 2007), where the court noted that the plaintiff was not an "employee" of Hartford Life and Accident Insurance Company, the disability benefits provider, as defined by the FMLA. The FMLA defines "eligible employee" to include "an employee who has been employed for at least 12 months by the employer *with respect to whom leave is requested.*" *Id*. (quoting 29 U.S.C. § 2611(2)(A) (emphasis added)). Mr. Mugno requested leave from his employer, the Societe Internationale de Telecommunications

9

Aeronautiques, Ltd., and not from Hartford. *Id*. Further, Mr. Mugno did not allege that he was employed by Hartford for at least 1,250 hours during a 12-month period, the other required element to be an "eligible employee." *Id*. Thus, because the plaintiff was not an "eligible employee" of Hartford as defined by the FMLA, his FMLA claim against Hartford was dismissed. *Id*. In this case, there are no allegations that plaintiff was employed by Liberty Life for at least 1,250 hours during a 12-month period and therefore the complaint fails to allege that she is an eligible employee of Liberty Life for FMLA purposes.

Although plaintiff does not use the term "joint employer" in the complaint, she does allege that Liberty Life was a "co-employer and/or ConAgra's designated agent" and that Liberty Life was "one of [her] 'employers' for purposes of the FMLA" [Doc. 1 at ¶¶ 32—33]. However, this conclusory allegation does not state a plausible claim that Liberty Life was a joint employer under the FMLA. By the clear language of the regulations, plaintiff must show that Liberty Life "exercise[d] some control over [her] work or working conditions" and that she performed work which simultaneously benefited Liberty Life and ConAgra. 29 C.F.R. § 825.106(a) (2013). Although the regulations permit a joint employment relationship to exist "[w]here one employer acts directly or indirectly in the interest of the other employer in relation to the employee," § 825.106(a)(2), there still must be some evidence, based on a totality of the circumstances, that both employers maintained control over the employee. *See Moldenhauer v. Tazewell-Pekin Consol. Commc'n Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). The instant complaint contains no allegations that Liberty Life exercised control over Ms.

10

Shoemaker's work or working conditions, or that she performed any work which benefitted Liberty Life. *Compare Murray v. Nationwide Better Health*, No. 10-3262, 2014 WL 53255, at *7 (C.D. Ill. Jan. 7, 2014) (no evidence that third party administrator exercised control over the working conditions of AT&T employees and was not a joint employer); *and Adams v. Valega's Prof. Home Cleaning, Inc.*, No. 1:12CV0644, 2012 WL 5386028, at *12 (N.D. Ohio Nov. 2, 2012) ("a company which provides human resources services, without supervisory or other control over employees, is not considered a joint employer under 29 U.S.C. § 825.106"); *with Grace v. USCAR*, 521 F.3d 655, 665—67 (6th Cir. 2008) (joint employment situation found where both staffing agency and employer exercised significant control over the employee).

The Court also looks to the description of Professional Employer Organizations ("PEO"), which is defined by the regulations as "[a] type of company that … contracts with client employers to perform administrative functions such as payroll, benefits, regulatory paperwork, and updating employment policies." 29 C.F.R. § 825.106(b)(2) (2013). The regulation further explains that a PEO is not a joint employer "when it merely performs such administrative functions." *Id*. This description fits the allegations of the present case. It appears that Liberty Life managed the administrative FMLA process for ConAgra, but that the ultimate decision whether to grant or deny leave was up to ConAgra. *See Baer v. Masonite Corp.*, No. 3:11CV124, 2011 WL 3806279, at *4 (N.D. Ind. Aug. 29, 2011) ("a benefits administrator's mere tangential involvement with the termination decision is not sufficient as a matter of law to establish a joint employer

11

relationship"). Thus, the Court concludes that Liberty Life was not a "joint employer" with ConAgra as defined by the FMLA regulations.

## IV. Conclusion

For all of the reasons set forth herein, the Court agrees that plaintiff has not alleged a plausible claim for relief against Liberty Life because it was not her "employer" as that term is defined by the FMLA. Therefore, the motion to dismiss [Doc. 12] will be **GRANTED** and Liberty Life will be dismissed from this case. An appropriate order will be entered.

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE