# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

TRACY SHOEMAKER,         )
                                    )
             Plaintiff,      )
                                    )
v.                             )     No. 2:14-CV-153
                                    )     Judge Phillips
CONAGRA FOODS, INC.,      )
                                    )
            Defendant.     )

## MEMORANDUM OPINION

Plaintiff Tracy Shoemaker sued her former employer for interference and retaliation under the Family Medical Leave Act ("FMLA"), disability discrimination under the Americans with Disabilities Act ("ADA"), and gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant ConAgra Foods, Inc. ("ConAgra") has filed a motion for summary judgment [Doc. 41] arguing that all of plaintiff's claims should be dismissed as a matter of law. The parties have filed extensive briefs and supporting documentation in support of and in opposition to the pending motion [Docs. 42, 56, 57, 60, 67, 68, 79], which the Court has carefully reviewed.

For the reasons set forth herein, the defendant's motion for summary judgment will be **GRANTED in part and DENIED in part**.

## I.    Supplemental Briefing

Before addressing the merits of the pending motion, the Court finds it necessary to address the issues raised in plaintiff's supplemental brief [Doc. 79]. Plaintiff complains

bitterly about the Court's prior decision [Doc. 78] to strike her original 23-page supplemental brief [Doc. 75] and restrict her to the 5-page requirement of E.D. Tenn. L.R. 7.1(d) [*see* Doc. 79]. Despite being granted leave to re-file a supplemental brief in compliance with Rule 7.1(d), plaintiff contends that this page limitation is unfair, contrary to *Seay v. TVA*, 339 F.3d 454 (6th Cir. 2003), and (inexplicably) in violation of her 5th Amendment rights and her right to equal protection under law [Doc. 79 at pp. 3—4]. Indeed, three and a half pages of her five-page revised supplemental brief are devoted to the unfairness of being required to follow the rules rather than addressing the merits of her arguments.

The Court first notes that there is no constitutional right to file a supplemental brief nor has plaintiff cited any authority for such. *Seay* explains that Fed. R. Civ. P. 56(c) affords a nonmoving party an opportunity to respond to the moving party's summary judgment arguments and that the purpose of this rule extends to situations "where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment." *Id*. at 481. However, "*Seay* only mandates that the district court provide an adequate opportunity to respond, not an indefinite opportunity to respond." *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014). More importantly and in contrast to *Seay*, plaintiff has been granted (twice) the opportunity to file a supplemental brief. Thus, she has requested and received an opportunity to respond to defendant's reply brief before the Court's ruling on summary judgment and that is all that *Seay* requires.

Further, plaintiff's complaints as to the page limitations imposed by L.R. 7.1 strain credulity. In response to ConAgra's summary judgment motion, plaintiff filed a 25-page

brief [Doc. 56], a 42-page affidavit with supporting exhibits [Doc. 57], and a 10-page response to ConAgra's statement of facts [Doc. 60]. Plaintiff did not request an extension of the 25-page briefing limit in L.R. 7.1(a), although she has arguably done an end-run around the rule by filing multiple pleadings. Similarly, plaintiff did not request an extension of the 5-page limit before filing her supplemental brief. Thus, her complaints about responding in the "limited space available" fall short.

Finally, the Court notes that part of the difficulty in sifting through this back-and-forth comes from the lack of specificity in plaintiff's complaint, of which defendant has complained. A fair reading of defendant's opening summary judgment brief is that it attempts to address the claims and theories that defendant believes plaintiff *may be* asserting [*see* Doc. 42 at pp. 8—9]. After receiving plaintiff's responsive pleading which asserts arguments not addressed in defendant's opening brief, it is not surprising that defendant's reply brief contains "new" arguments and evidence to respond to plaintiff's arguments. As noted, plaintiff was granted leave to respond to defendant's new evidence and arguments. Nothing in *Seay*, the Federal Rules, or this Court's Local Rules provide an unlimited opportunity to respond or for indefinite briefing. Accordingly, to the extent that plaintiff's revised supplemental response [Doc. 79] can be construed as a motion for relief from the rules applicable to all parties, her motion is **DENIED**.

## II.    Relevant Facts

Ms. Shoemaker worked for ConAgra for twelve years as a process technician/machine operator at the company's plant in Cocke County, Tennessee [Doc. 57

3

at ¶¶ 2—3]. Ms. Shoemaker is married to Bruce Shoemaker and they are the parents of two children [*Id.* at ¶ 1]. In July 2012, plaintiff was terminated from her position at ConAgra for violation of the company's attendance policy [Doc. 1 at ¶ 25; Doc. 41-2 at ¶ 4].

Under ConAgra's attendance policy, employees accumulate one attendance point per day for absences not covered by the FMLA or otherwise protected by law unless the employee brings in a doctor's note [Doc. 41-3]. If an employee brings in a doctor's note for a continuous period of absence of less than five days, the employee receives only one attendance point for the entirety of the absence. For example, an employee who was absent for four consecutive days and provided a doctor's note would only receive one attendance point instead of four points. If the absence was covered by the FMLA or otherwise protected by law, the employee would not receive any attendance points. An employee who does not accumulate any attendance points within a full calendar month gets his/her total attendance point balance reduced by one point (a.k.a. a "perfect attendance point reduction"). An employee who accumulates ten or more attendance points is subject to termination.

Plaintiff states that she suffers from a painful back condition for which she periodically seeks chiropractic and medical treatment [Doc. 57 at ¶ 4]. Plaintiff's husband suffers from degenerative bone disease and has been disabled since 2004 [*Id.*]. Since 2004, plaintiff took intermittent FMLA leave from her job at ConAgra to care for her disabled husband [*Id.* at ¶ 5]. The physical exertion required to care for her husband occasionally injured plaintiff's back and she has taken FMLA leave to recuperate [*Id.* at ¶ 12]. Plaintiff

periodically discussed her husband's disability with members of ConAgra's Human Resources ("HR") staff and the HR staff handled her requests for FMLA leave [*Id.* at ¶¶ 5—6]. Plaintiff further claims that her back condition is a disability [Doc. 41-1 at p. 11]. At all relevant times, it is undisputed that plaintiff did not have any work restrictions on lifting and could lift 50 pounds as required by her position [Doc 41-1 at pp. 18, 21—22].

Plaintiff claims that she took FMLA leave to care for her husband between 2005 and 2007, and again in 2010 [Doc. 41-1 at p. 3]. Her attendance record reflects that some of her FMLA absences are related to her husband, but some dates simply indicate that it was an unspecified FMLA absence [Doc. 41-4]. It is unclear whether all of those unspecified FMLA absences were for plaintiff's own serious health condition or otherwise. For example, plaintiff took FMLA leave to care for her daughter after surgery to remove her tonsils and adenoids in December 2011, but plaintiff's attendance record designates those days as FMLA leave without further explanation as to the reason for the absence [Doc. 57 at ¶ 13; Doc. 41-4 at p. 2].

At the beginning of 2012, plaintiff had 6.75 attendance points. Plaintiff received the following attendance points and point reductions in 2012 as follows:

- February 5, 2012    +1.0 point (for a total of 7.75 points)

- March 31, 2012    -1.0 point reduction for perfect attendance (for a total of 6.75 points)

- April 5, 2012    +1.0 point (for a total of 7.75 points)

- May 9, 2012    +0.5 point (for a total of 8.25 points)

- May 24, 2012    +1.0 point (for a total of 9.25 points)

5

- June 4, 2012        +0.5 point (for a total of 9.75 points)

- June 11, 2012       +1.0 point (for a total of 10.75 points)

[Doc. 41-2 at ¶ 9; Doc. 41-4]. Defendant notes that plaintiff's attendance report shows that she missed more than 40 days between January and June 2012 for which she was not assessed attendance points (FMLA leave, paid sick leave, paid personal leave, or absence with a doctor's note) [Doc. 41-2 at ¶ 10]. The only attendance point in dispute is the one for plaintiff's April 5, 2012 absence, and the corresponding failure to benefit from a perfect attendance point reduction for the month of April 2012 [Doc. 41-1 at p. 16].

Liberty Life Assurance Company of Boston[1] is the FMLA administrator for ConAgra [Doc. 41-1 at p. 17; Doc. 19 at p. 2]. In early April 2012, plaintiff missed work due to a "back re-injury" sustained while caring for her husband [Doc. 57 at ¶ 14]. Plaintiff was required to and did telephone ConAgra's "Attendance Hotline" number to advise ConAgra that she would be absent [*Id.*]. Plaintiff then telephoned Liberty Life to verbally request FMLA leave for her absences from April 2, 2012 through April 6, 2012 [*Id.* at ¶¶ 14—15]. After receiving the FMLA certification documents from Liberty Life, ConAgra employees were supposed to fill out the employee section and then have the health care provider complete the documents and fax them to Liberty Life [*Id.* at ¶ 14]. The record reflects that Liberty Life sent the FMLA medical certification form to plaintiff on April 9, 2012 for completion and that she had requested leave "due to [her] own serious health

---

[1]Although the parties both refer to ConAgra's FMLA administrator as "Liberty Mutual," it has been determined that the proper name of the company is the Liberty Life Assurance Company of Boston [Docs. 19, 20] and the Court will interpret all references to "Liberty Mutual" as "Liberty Life."

6

condition" from April 2, 2012 through April 6, 2012 [Doc. 57-2]. The "Certification of Health Care Provider" form sent to Ms. Shoemaker indicates a request for leave from April 2, 2012 through April 6, 2012 [Doc. 57-3]. Plaintiff acknowledges that the FMLA paperwork must be sent to Liberty Life within 30 days [Doc. 41-1 at p. 17].

Plaintiff contends that she completed the employee sections on the FMLA forms and took them to her chiropractor, Dr. Randy Modglin, for completion and transmission to Liberty Life [Doc. 57 at ¶ 18]. On April 12, 2012, plaintiff turned in original copies of Dr. Modglin's medical excuses for those absences to ConAgra, one excuse dated April 4 for her absences of April 2 to April 4, and one excuse dated April 9 for her absences April 4 to April 6 [Doc. 57 at ¶ 20; Doc. 57-4]. Both excuses are stamped "REC'D APR 12 2012" [*Id.*]. ConAgra does not dispute that it received the medical excuses for these absences. Plaintiff now contends that Dr. Modglin misplaced or failed to transmit the FMLA paperwork to Liberty Life [Doc. 41-1 at p. 17].

On April 24, 2012, Liberty Life notified plaintiff that her FMLA medical certification had not been received [*Id.* at ¶ 22]. Dr. Modglin's staff could not locate the original FMLA documents, so the office manager and plaintiff prepared a new FMLA medical certification form [*Id.*]. Plaintiff mistakenly wrote in the requested leave period as April 2 through April 4, 2012, instead of April 2 through April 6, 2012 [*Id.* at ¶ 23]. Dr. Modglin signed and sent the new form to Liberty Life on May 9, 2012 [*Id.*; Doc. 57-5].

On May 9, 2012, Liberty Life advised plaintiff that her request for FMLA leave was denied because she "did not submit and/or fully complete the required documents" for her leave [Doc. 57 at ¶ 25; Doc. 57-6]. The May 9 letter also gave plaintiff seven (7) days to

appeal the decision.  At the time, plaintiff believed that Liberty Life had not received her second FMLA certification form.  On May 11, 2012, Liberty Life advised plaintiff that her request for FMLA leave was approved for April 2 through April 4, 2012, but not for April 5 [Doc. 57 at ¶ 26; Doc. 57-7].

Despite this notification from Liberty Life, plaintiff claims she was surprised on June 6, 2012, to learn from ConAgra's HR Generalist Sue Serkosky that she had accumulated 18.25 attendance points and that her April 5 absence had not been covered by FMLA [Doc. 57 at ¶ 29].  After she provided documentation for some of the intervening absences, plaintiff's attendance point total was reduced to 11.25 [*Id.* at ¶¶ 31—32].  Plaintiff and Ms. Serkosky also discussed correcting the information from Liberty Life so that her April 5 absence would be covered by FMLA and therefore her attendance point total would be reduced by one point [*Id.* at ¶ 34].  Further, plaintiff and Ms. Serkosky discussed that if the attendance point for April 5 was removed, plaintiff would then be eligible to have another attendance point removed for "perfect attendance" in the month of April 2012.  Removal of this additional point would place plaintiff below the ten-point threshold for termination [*Id.* at ¶ 35].

On June 14, 2012, plaintiff called Liberty Life and advised that her April 5 absence should have been covered by FMLA [*Id.* at ¶ 38].  Plaintiff was advised to get an amended medical certificate from her doctor and the April 5 absence would be covered by FMLA if ConAgra's Human Resources Department would accept it [*Id.*].

On June 14, 2012, plaintiff's I.D. pass card would not allow her entry to the plant. She was advised that she had been suspended and she needed to go to the HR department

[*Id*. at ¶ 41].  She arranged to meet with ConAgra's HR managers the next day [*Id*.].  When she arrived at the HR office the next morning, June 15, 2012, plaintiff received the first page of her attendance record which indicated a total of 14.75 attendance points [*Id*. at ¶ 42; Doc. 57-10].  During her meeting with HR Generalist Eric Wrzesniewski and two union representatives, Mr. Wrzesniewski claimed plaintiff had missed a "last chance" meeting on March 22, 2012, as well as other disciplinary attendance meetings, all of which plaintiff claimed to have no knowledge [*Id*. at ¶ 43].  Plaintiff explained that many of the absences on her attendance record should have been covered by FMLA, including the April 5 absence, and that others should be assessed fewer points [*Id*. at ¶¶ 46—48].  Ultimately, plaintiff claims that Mr. Wrzesniewski told her to "get things fixed by Monday" [*Id*. at ¶ 49].

Unknown to plaintiff at the time, HR Manager Dennis Gregg had sent plaintiff a letter via regular and certified mail, dated June 12, 2012, stating that the company had "attempted to meet to review your attendance records and points" on several occasions and that her attendance point total was 12.75 [*Id*. at ¶ 50; Doc. 57-11].  The letter further advised that she must provide substantiating documentation for any unexcused absences to be covered by FMLA "no later than Monday, June 18, 2012" [*Id*.].  The signed certified receipt for the letter indicates that plaintiff received it on June 25, 2012 [*Id*.].

Later on June 15, 2012, plaintiff went to Dr. Modglin's office and obtained an amended FMLA medical certification for the April 2 through April 6 absences [Doc. 57 at ¶¶ 39, 54; Doc. 57-9].  The office manager faxed the amended FMLA certification and Dr. Modglin's medical excuses for those absences to Liberty Life [*Id*.].  Plaintiff also claims

9

that she hand-delivered a copy of the amended FMLA paperwork and medical excuses to ConAgra's HR department on the afternoon of June 15, along with the fax confirmation transmittal sheet [Doc. 57 at ¶ 55]. Plaintiff admits that her corrected paperwork for the April 5 absence was not submitted within 30 days to Liberty Life, but she contends that ConAgra should have forgiven her for this clerical error [Doc. 41-1 at p. 19].

Although the record reflects that Liberty Life did receive the amended paperwork on June 15 and that ConAgra was aware of this, ConAgra did not approve the April 5 absence as FMLA leave because the documentation was not received within the normal 30-day time period.[2] On Monday, June 18, 2012, plaintiff met with Mr. Wrzesniewski, Mr. Gregg, and two union stewards and was advised that ConAgra would not accept her amended request for FMLA coverage of the April 5 absence because it was beyond the 30-day limit [Doc. 57 at ¶ 61]. ConAgra terminated plaintiff on July 11, 2012, for violation of the attendance policy [Doc. 57-15]. Plaintiff's termination was grieved through the collective bargaining process, but ConAgra declined to reinstate her because she had not shown "any sustainability to improving her attendance" [Doc. 57-16].

ConAgra's Human Resources Manager Dennis Gregg made the decision to terminate plaintiff's employment when her attendance points reached the level of 10.75 under the company's attendance policy [Doc. 41-2 at ¶ 3—4]. Mr. Gregg has worked at ConAgra's facility in Newport since June 29, 2011 [*Id.* at ¶ 2]. Mr. Gregg states that he

---

[2]Plaintiff's FMLA leave for April 2-4 was approved on May 14; thus, plaintiff had 30 days from May 14, or until June 14, 2012, to submit documentation to extend the leave to include the April 5 absence. Liberty Mutual did not receive the amended paperwork which included the April 5 absence until June 15, 2012 [Doc. 57-12].

was unaware of Mr. Shoemaker's medical impairment until after the plaintiff was terminated [*Id.* at ¶ 12]. Plaintiff admits that she never talked to Mr. Gregg about her husband's medical condition [Doc. 41-1 at p. 14]. Ms. Shoemaker's position was filled by Lia Isayeva, a female [Doc. 41-2 at ¶ 11]. Plaintiff claims she is unaware of any other women who were terminated for accumulating ten or more attendance points [Doc. 41-1 at p. 11]. Plaintiff admits that she was familiar with ConAgra's anti-discrimination and anti-retaliation policies, but she never called the company hotline or otherwise reported that she felt she was being treated unfairly [Doc. 41-1 at p. 26].

## III.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a

particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### IV. Analysis

#### A. FMLA Claims

The FMLA enables covered employees to take up to twelve weeks of leave per year for various purposes specified in the statute, including to care for a family member with a serious health condition or for the employee's own "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(C) & (D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital,

12

hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). At the expiration of the employee's leave period, she must be reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1).

The Sixth Circuit recognizes two distinct theories of wrongdoing under the FMLA. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012); *Killian v. Yorozu Auto. Tenn., Inc.,* 454 F.3d 549, 555–56 (6th Cir. 2006). The "entitlement" or "interference" theory arises from §§ 2615(a)(1) and 2614(a)(1), which make it unlawful for employers to interfere with or deny an employee's exercise of her FMLA rights (§ 2615(a)(1)), and which require the employer to restore the employee to the same or an equivalent position upon the employee's return (§ 2614(a)(1)). *Arban v. West Publ'g Corp.,* 345 F.3d 390, 400–01 (6th Cir. 2003). The "retaliation" or "discrimination" theory, on the other hand, arises from § 2615(a)(2), which prohibits an employer from discharging or discriminating against an employee for "opposing any practice made unlawful by" the Act. *Id.*

Plaintiff argues that her "basic" claim is for interference with her FMLA rights, but that she has evidence to support a claim under either the "interference" or "entitlement" theory or the "retaliation/discrimination" theory [Doc. 56 at pp. 14—15]. The Court will address each theory in turn.

### 1.    FMLA Retaliation

Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the burden-shifting framework announced in *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792 (1973). *Seeger,* 681 F.3d at 283. To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) this exercise of her protected rights was known to the defendant, (3) she suffered an adverse employment action, and (4) there was a causal connection between the adverse employment action and the protected activity. *Tennial v. United Parcel Serv.*, No. 15-6356, 2016 WL 6156315, at *9 (6th Cir. Oct. 24, 2016). If the plaintiff satisfies her prima facie showing, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Seeger,* 681 F.3d at 284. If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination. *Id.* at 285. "Although the burdens of production shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)) (alteration in original).

In this case, the only prima facie element in dispute is whether plaintiff can establish a causal connection. In order to establish a causal connection, a plaintiff must show some type of retaliatory intent. *Tennial*, 2016 WL 6156315, at *9. An FMLA retaliation claim accordingly centers around "[t]he employer's motive … because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 508 (6th Cir. 2006) (emphasis in original).

Ms. Shoemaker therefore must establish that the true reason for her termination was not the accumulation of ten attendance points, but the fact that she took FMLA leave. ConAgra argues that plaintiff cannot establish a prima facie case of FMLA retaliation because she has no evidence of a causal connection between the exercise of her FMLA rights and her termination [Doc. 42 at p. 10]. ConAgra contends that plaintiff's termination was the result of her accumulation of more than ten points under the Attendance Policy and plaintiff cannot show that that reason was pretextual [*Id.* at pp. 10—12]. Plaintiff does not directly respond to these arguments, instead referring generally to the evidence of ConAgra's "mendacity" and "duplicitous misrepresentations" throughout her brief [*see, e.g.*, Doc. 56 at pp. 15, 22].

While ConAgra argues that plaintiff's termination was the result of her accumulation of more than ten attendance points, it cannot be disputed that one of the disputed points was for her absence on April 5, 2012, for which she had attempted to request FMLA leave. ConAgra does not dispute that it had Dr. Modglin's excuses for those absences. It also appears undisputed that, after her initial submission of the FMLA paperwork, plaintiff submitted two more FMLA request forms to Liberty Life. The first replacement form mistakenly did not include April 5 in the requested leave period. The second "amended" form, which included April 5 in the requested leave period, was sent to both ConAgra and Liberty Life on June 15, 2012, the date when Mr. Wrzeniewski told plaintiff to "get things fixed by Monday [June 18]."

ConAgra argues that Mr. Wrzeniewski's statement, even if accepted as true, does not equate to ConAgra's forgiveness of the untimely submission of FMLA documents and

that his statement was simply in response to her claims that certain absences were "covered" by FMLA, such as her then-pending FMLA request for some absences in May 2012 [Doc. 68 at pp. 3—5]. The Court must accept Ms. Shoemaker's testimony as true for purposes of summary judgment that Mr. Wrzeniewski told her to "get things fixed by Monday." The interpretation of that statement, however, is for the finder of fact to determine. Ms. Shoemaker's interpretation is not clearly unreasonable. One could easily understand Mr. Wrzeniewski's statement to mean that plaintiff had until Monday, June 18, to submit documentation supporting her request for the April 5 absence, or any other qualifying absence, to count as FMLA leave. Since she did as instructed, plaintiff reasonably expected that her absence would be counted as FMLA leave and therefore excused. The removal of the attendance point for this absence and the corresponding deduction for perfect attendance in April 2012 would have brought plaintiff's attendance point total below the ten-point termination mark.

Further, the amended FMLA certification form was also submitted prior to the June 18, 2012 deadline contained in Mr. Gregg's letter directing her to provide documentation substantiating any of her absences as covered by FMLA. Again, ConAgra argues that Mr. Gregg's letter only references absences that are "covered" by the FMLA and was in reference to the pending approval for her absences in May [Doc. 68 at pp. 5—6]. As with the statement by Mr. Wrzeniewski, ConAgra's argument falls short. Mr. Gregg's letter refers to "any absences currently unexcused" and does not limit the request for FMLA documentation to plaintiff's absences in May. Plaintiff's interpretation that she had until June 18 to provide supporting FMLA documentation for "any" unexcused absence,

16

including April 5, is a reasonable interpretation and one for consideration by the jury. While this evidence is not overwhelming evidence of a retaliatory motive, a reasonable jury could question why ConAgra directed plaintiff to submit any additional FMLA paperwork by June 18, but nevertheless terminated her after she did so.

In light of the foregoing evidence, which the Court must view in the light most favorable to the plaintiff, the Court finds that there are genuine issues of material fact which preclude the entry of summary judgment as to plaintiff's FMLA retaliation claim.

### 2. FMLA Interference

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA right. 29 U.S.C. § 2615(a)(1). "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong v. Dow Chem. Co.,* 503 F.3d 441, 447 (6th Cir. 2007). To establish a prima facie case of FMLA interference, plaintiff must show that (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012); *Killian*, 454 F.3d at 556. As with the retaliation claim, the *McDonnell Douglas* framework applies, meaning that the employer must respond to the prima facie case with evidence that "it had a legitimate reason unrelated to the exercise of FMLA rights for

17

terminating the employee," whereupon the plaintiff must show pretext. *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 351 (6th Cir. 2013) (quoting *Donald*, 667 F.3d at 761).

ConAgra responds that plaintiff's FMLA interference theory was not sufficiently pled in the complaint to give sufficient notice of her claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) [Doc. 68 at p. 11]. Plaintiff's complaint is not a model of surgical precision, but it clearly asserts plausible claims under the FMLA and includes the allegation that ConAgra "refused to adjust the plaintiff's FMLA-entitlement coverage to include the plaintiff's April 5, 2012 absence" [Doc. 1 at ¶ 26]. Combined with the factual allegations in the complaint which clearly assert that she was denied FMLA leave for the April 5 absence, one can reasonably infer a claim for interference or denial of FMLA benefits.

As to the substance of plaintiff's FMLA interference claim, ConAgra does not explicitly refute that plaintiff can establish a prima facie case. Instead, ConAgra relies on its previous arguments that it did not "extend the deadline" for her to submit the required FMLA certification for the April 5 absence [Doc. 68 at pp. 10—11].[3] Thus, the argument focuses on whether plaintiff was entitled to FMLA leave for this absence. As set forth above, both Mr. Wrzeniewski's statement and Mr. Gregg's letter can be reasonably

---

[3]ConAgra also correctly notes that plaintiff's reliance on 29 C.F.R. § 825.303 is misplaced [Doc. 56 at pp. 15, 17; Doc. 68 at pp. 10—11]. Section 825.303 of the FMLA regulations requires an employee to give notice of the need for leave "as soon as practicable" and in compliance with "the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(a) & (c). There is no dispute that plaintiff timely notified ConAgra of her need for FMLA leave.

interpreted as granting plaintiff additional time to submit documentation that would cover the April 5 absence by the FMLA. If the finder of fact interprets this evidence as an extension of the deadline, then it appears that plaintiff was indeed denied FMLA leave to which she was entitled and can establish a prima facie case of interference. Further, plaintiff has presented some evidence that ConAgra's reliance on plaintiff's accumulation of ten attendance points for her termination was pretextual.

ConAgra relies on *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 648 (6th Cir. 2013) and *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563 (6th Cir. 2005), for the proposition that an employee's failure to timely provide a medical certification in support of a request for FMLA leave can be a basis to deny the leave and will not support an FMLA interference claim [Doc. 68 at p. 7]. ConAgra is correct as far as this proposition goes. However, in both *Kinds* and *Frazier*, the plaintiffs were given extensions of time to submit their respective medical certifications and did not do so within the extended deadlines. *Kinds*, 724 F.3d at 651; *Frazier*, 431 F.3d at 565. In the instant case, plaintiff's proof reasonably supports the interpretation that she was given until June 18, 2012 to submit the medical certification for her April 5 absence (or any other potentially covered absence) and she submitted the information prior to the expiration of her extension.

Accordingly, the Court finds that there are genuine issues of material fact that preclude the entry of summary judgment on plaintiff's FMLA interference claim.

B.      ADA Claims

ConAgra argues that plaintiff has failed to adequately plead a claim under the ADA such that it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and the Supreme

Court's decisions in *Twombly* and *Iqbal*. Specifically, ConAgra argues that plaintiff has not pled that she is a qualified individual with a disability; she does not describe any limitations caused by her "painful back condition" [Doc. 1 at ¶ 7]; and she does not describe how her back condition substantially limits a major life activity [Doc. 42 at p. 12]. ConAgra further argues that, to the extent plaintiff has alleged an associational disability discrimination claim, that claim also has not been adequately pled pursuant to Rule 12(b)(6) and/or fails as a matter of law pursuant to Rule 56 [*Id*. at pp. 13—16].

Plaintiff's ADA claims are indeed a moving target. Relative to the ADA, the complaint alleges that plaintiff has been discriminated against "because of her disability … and because of her association with a disabled individual who is her husband" [Doc. 1 at ¶ 26]. Her response in opposition to the summary judgment motion argues that her ADA claims are "premised upon ConAgra's being motivated to violate her FMLA rights and discharge her because she had a disability, or was regarded as having a disability, and/or is married to a disabled spouse" [Doc. 56 at p. 24]. These, of course, are three distinct types of ADA claims. While ConAgra suggests that plaintiff "seems to have abandoned her claim that she suffered from an ADA-qualifying disability" [Doc. 68 at p. 12], in light of the imprecision in plaintiff's pleadings, the Court finds that the better route is to simply address whether plaintiff can establish any ADA claim.

1.    Whether Plaintiff was Disabled

The ADA prohibits covered employers from discriminating against qualified individuals with a disability. 42 U.S.C. § 12112. A plaintiff may prove that she was discriminated against based on her disability either through direct or indirect evidence.

*Hedrick v. W. Reserve Case Sys.*, 355 F.3d 444, 453—54 (6th Cir. 2004). Ms. Shoemaker has presented no direct evidence of disability discrimination so her claims must be reviewed under the *McDonnell Douglas* burden-shifting framework. *Id.* at 452—53. To state a prima facie case of discrimination under the ADA, the plaintiff must establish that: (1) she is disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of her disability; and (5) the disabled individual was replaced. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 894 (6th Cir. 2016); *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). Furthermore, the plaintiff's disability must be a "but for" cause of the adverse employment action. *Tennial*, 2016 WL 6156315, at *7; *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc).

The plaintiff may establish the first prong of the prima facie case if the plaintiff (1) has a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities; (2) the plaintiff has a record of such impairment; or (3) the plaintiff is regarded by an employer as having such an impairment. *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)) (quotations omitted); *see also* 42 U.S.C. §§ 12102(1)(A)-(C). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). While this is not meant to be a "demanding standard," 29 C.F.R. § 1630.2(j)(1)(i), the plaintiff

must present more than "bare assertions" of an impairment. *See Neely v. Benchmark Fam. Servs.*, 640 F. App'x 429, 433 (6th Cir. 2016).

Assuming that plaintiff's unspecified "painful back condition" is an impairment, plaintiff has not identified which major life activity is substantially limited by this impairment or how she is limited in performing a major life activity "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). She has submitted no evidence that her impairment has substantially limited her ability to lift or to work, two possibilities that come to mind with regard to back conditions. There is no evidence that she requested a reasonable accommodation or limitations on her regular duties at ConAgra. Further, plaintiff has admitted that she did not have any working or lifting restrictions in 2012 and that she regularly lifted 50 pounds at work [Docs. 42, 60 at ¶¶ 22-23]. The only arguably relevant evidence is that she occasionally requested and was granted FMLA leave for her own serious health condition. This does not, without more, equate to being substantially limited in a major life activity. *See Schindewolf v. City of Brighton*, No. 14-12161, 2015 WL 3451150, at *4 (E.D. Mich. May 29, 2015) ("Simply applying for and using FMLA does not equate to a finding of or knowledge of disability pursuant to the ADA"). Accordingly, the Court finds that plaintiff has not shown that there is a genuine issue of material fact as to whether she was "disabled" within the meaning of the ADA and she therefore cannot establish a prima facie case of disability discrimination on the basis of her own disability.

2.      Whether Plaintiff Was Regarded as Disabled

An employee is "regarded as" disabled under the ADA if his or her employer (1) mistakenly believes that the employee has a physical impairment that substantially limits one or more major life activities, or (2) mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Ferrari*, 826 F.3d at 893; *see* 42 U.S.C. § 12102(3)(A) ("[a]n individual meets the requirement of 'being regarded as having an impairment' if the individual … has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity"). "Thus, an individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.,* 237 F.3d 701, 706 (6th Cir. 2001).

Plaintiff's argument seems to be that she was regarded as disabled because she had used FMLA leave in the past and may need to use FMLA leave in the future [Doc. 56 at pp. 24—25]. As with her own disability claim, plaintiff has not identified the major life activity in which she was regarded as substantially limited, nor has she presented any evidence that ConAgra mistakenly perceived her as unable to do her job or any aspect of her job.[4] As ConAgra notes, "regarded as" cases rest "almost entirely in the employer's subjective state of mind." *Hall v. Eastman Chem. Co.*, 136 F. App'x 730, 732 (6th Cir.

---

[4]The Court further notes that to be substantially limited from the major life activity of "working," an employee must be precluded from a class of jobs or a broad range of jobs, not just her own job. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999); *Ferrari*, 826 F.3d at 893.

2005); *Ross*, 237 F.3d at 709. Unlike in *Ross*, there is simply a lack of evidence that ConAgra viewed plaintiff through "stereotypes based on her impairment." *Taylor v. Consolidated Prods., Inc.*, No. 3:07-CV-421, 2009 WL 1748729, at *5 (E.D. Tenn. June 19, 2009) (Varlan, J.); *see Dunaway v. Ford Motor Co.*, 134 F. App'x 872, 877 n.3 (6th Cir. 2005) (plaintiff "has not even presented a modicum of evidence the employer perceived him as disabled under the ADA"). Knowledge that Ms. Shoemaker took FMLA leave, without more, is insufficient to show that she was regarded as disabled. *Schindewolf*, 2015 WL 3451150, at *4; *Taylor v. Rite Aid Corp.*, 993 F. Supp. 2d 551, 565 (D. Md. 2014); *see Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 568 (6th Cir. 2009) (knowledge of employee's health problems does not mean the employer regarded him as "impaired"). Accordingly, the Court finds that Ms. Shoemaker cannot establish a prima facie case that she was regarded as disabled.

3. Whether Plaintiff was Discriminated Against by Association with a Disabled Person

The ADA prohibits employers from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). The Sixth Circuit has recognized three theories of ADA associational discrimination: "(1) expense; (2) disability by association; and (3) distraction." *Williams v. Union Underwear Co.*, 614 F. App'x 249, 254 (6th Cir. 2015) (quoting *Stansberry v. Air Wisconsin Airlines Corp.,* 651 F.3d 482, 487 (6th Cir. 2011)). Under the expense theory, an employer violates the ADA if it takes an adverse employment action against an

employee because of the cost of insuring the associated disabled person under the employer's health plan. *Id.* The disability-by-association theory takes two forms: (1) if "the employer fears that the employee may contract the disability of the person he or she is associated with," or (2) if "the employee is genetically predisposed to develop a disability that his or her relatives have." *Id.* Under the distraction theory, an employer violates the ADA if it discriminates against an employee because the employee has been "somewhat inattentive at work because of the disability" of the associated person. *Id.* In her responsive briefs, plaintiff does not articulate which of the theories she relies on, only that she has been discriminated against because she is married to a disabled husband and would have to continue to take FMLA leave to care for him [Doc. 56 at p. 24—25].

To establish a prima facie case of associational discrimination, plaintiff must produce evidence from which a reasonable jury could conclude (1) that she was qualified for the position; (2) that ConAgra subjected her to an adverse employment action; (3) that ConAgra knew that her husband had a disability; and (4) that the adverse employment action "raises a reasonable inference that the disability of [her husband] was a determining factor in the decision." *Id.* (quoting *Stansberry,* 651 F.3d at 487). ConAgra argues that plaintiff cannot establish either the third or fourth elements of a prima facie case of associational discrimination [Doc. 42 at pp. 15—16; Doc. 68 at p. 14]. Plaintiff responds that ConAgra was aware of her husband's disability because she discussed it with various members of the Human Resources staff and because her Employee Information sheet, which documents her attendance points, identifies the FMLA absences used to care for her husband [Doc. 56 at pp. 3—4]. ConAgra emphasizes that Mr. Gregg, the decisionmaker

25

in her termination, has affirmatively stated that he was unaware of her husband's disability and the fact that plaintiff did not take FMLA leave to care for her husband at any time after Mr. Gregg came to ConAgra in June 2011 [Doc. 42 at p. 15; Doc. 68 at p. 14].

Assuming for purposes of summary judgment that ConAgra knew plaintiff's husband was disabled, plaintiff has nevertheless presented no evidence, under any of the three theories, that her husband's disability was a determining factor in the decision to terminate her. Plaintiff has not presented any evidence related to the cost of insuring Mr. Shoemaker under ConAgra's health plan, assuming that he was, or that plaintiff had been somewhat inattentive at work because of her husband's disability. There is no indication that her husband's condition is potentially contagious or that she could be genetically predisposed to develop the same condition. Her past and potential future use of FMLA leave has no bearing on any of the three theories of associational discrimination. Indeed, as noted in *Stansberry*, the associational discrimination provision of the ADA does not require employers to provide reasonable accommodations, including leave, for non-disabled workers. 651 F.3d at 486 ("If he or she violates a neutral employer policy concerning attendance or tardiness, he or she may be dismissed even if the reason for the absence or tardiness is to care for the spouse") (quoting 1990 U.S.C.C.A.N. 303, 343—44 (1990)). Accordingly, Ms. Shoemaker has not satisfied her burden to produce evidence of a prima facie case of ADA associational discrimination because no reasonable jury could believe there was a causal connection between her husband's disability and her termination.

The defendant's motion for summary judgment will be granted as to plaintiff's ADA claims.

### C.    Title VII Claim

Plaintiff claims that her termination is also the result of discrimination on the basis of her gender in violation of Title VII and that ConAgra has a practice "of allowing male employees who have exceeded their FMLA-entitlement limit because of their illness, or illnesses in their families, to return to work and remain employed" [Doc. 1 at ¶ 27]. Plaintiff further claims that ConAgra has "given male non-disabled employees the opportunity to remain employed even after they have exceeded the disciplinary points discharge limits and after providing them with 'last chance agreements'" [*Id.*].

Because she has no direct evidence of discrimination,[5] Ms. Shoemaker's Title VII claim of gender discrimination is analyzed pursuant to the familiar *McDonnell Douglas* burden shifting framework.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).  Accordingly, she has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence by showing: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was replaced by a person outside the protected class or treated differently than similarly-situated non-protected employees.  *Id*.  Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer evidence of a

---

[5]A claim of gender discrimination may be established through either direct or circumstantial evidence of discrimination. *Reeves v. Tenn. Farmers Mut. Ins. Co.*, 555 F. App'x 509, 511 (6th Cir. 2014).

legitimate, non-discriminatory reason for the adverse employment action. *Id*. If the defendant does so, the burden then shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. *Id*. at 391—92. Throughout this process, the plaintiff retains the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. *Id*. at 392.

ConAgra argues that plaintiff fails to state a prima facie claim of gender discrimination because ConAgra replaced plaintiff with another female employee and plaintiff has no evidence that she was treated differently than similarly-situated male employees [Doc. 42 at pp. 17—18]. ConAgra also argues that plaintiff has no evidence of pretext [*Id*. at p. 18]. In response, plaintiff does not dispute that she was replaced by a female employee, but contends that she "was treated more harshly than male employees" [Doc. 56 at p. 23]. She points to evidence that employee David Lane was permitted to accumulate 25.75 attendance disciplinary points before he was terminated [*Id*. at p. 24].

In reply, ConAgra points out that Mr. Lane was only one of several male employees who have been discharged for violating the attendance policy [Doc. 68 at p. 15; Doc. 72 at ¶ 18]. With reference to Mr. Lane, ConAgra has submitted proof that many of his absences in 2015 were covered by FMLA and that he also applied for Short Term Disability to cover certain absences [Doc. 72 at ¶¶ 7—9]. ConAgra has also presented proof that its Human Resources team was out of the plant during October through early December 2015 due to union contract negotiations [*Id*. at ¶ 16]. ConAgra nevertheless intended to meet with Mr. Lane regarding his attendance point accumulation in November, but he was out on another leave of absence until early December [*Id*.]. Due to holiday schedules, the company was

not able to meet with Mr. Lane until January 8, 2016, at which time he was suspended and then discharged on January 18, 2016 [*Id*. at ¶ 17]. Plaintiff has presented no evidence to rebut the facts related to Mr. Lane's situation. Further, ConAgra has submitted evidence of four other male employees who were discharged after their accumulation of ten attendance points [*Id*. at ¶ 18]. Thus, ConAgra argues that plaintiff cannot show that any alleged difference in treatment between her and Mr. Lane was based on gender. Plaintiff objects to the Court's consideration of this evidence and argues that they are not proper comparators to her situation [Doc. 79 at pp. 4—5].

To be similarly situated, the individual with whom the plaintiff seeks to compare herself must be similar in "all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original). The only evidence plaintiff has presented regarding Mr. Lane is that he was a male employee who also took some FMLA leave and was ultimately terminated for accumulating more than ten attendance points. The distinction is that he eventually accumulated more than the 10.75 points plaintiff accumulated at the time of her termination. This argument falls short. Both plaintiff and Mr. Lane were terminated for the same thing – violation of ConAgra's attendance policy. In other words, they received the same discipline for the same policy violation. Although it took longer for ConAgra to effectuate its discipline of Mr. Lane, he ultimately fared no better.

Therefore, the Court agrees that plaintiff cannot establish the fourth element of a prima facie case of discrimination, *i.e.*, that she was replaced by a person outside the protected class or that she was treated differently than similarly-situated non-protected

employees. Plaintiff does not dispute that she was replaced by a female employee, Lia Isayeva, and she cannot refute ConAgra's evidence that at least four male employees, aside from Mr. Lane, have also been terminated for accumulating ten or more attendance points. While plaintiff complains that some of these employees were not eligible for or did not take FMLA leave [Doc. 79 at pp. 4—5], that is irrelevant for purposes of her gender discrimination claim. The evidence reflects that male employees were also terminated for accumulating more than ten attendance points just as she was. Thus, plaintiff cannot show any differentiating treatment between her and Mr. Lane or the other male comparators. Even if Ms. Shoemaker could establish a prima facie case, ConAgra has presented evidence of a legitimate, non-discriminatory reason for her termination – her accumulation of more than ten attendance points.

Ms. Shoemaker claims that ConAgra "lied to her about extending the time for her to furnish supplemental FMLA documentation" and "fabricated attendance warnings" as evidence of pretext [Doc. 56 at p. 24]. A plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000); *Wheeler v. McKinley Enters.,* 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993).

Plaintiff has simply shown no evidence that the stated reason for her termination was a pretext for gender discrimination. She complains about ConAgra's refusal to reinstate her because she had not shown "any sustainability to improving her attendance," but this statement has nothing to do with her gender. She also reiterates her arguments regarding her efforts to get the April 5 absence covered by FMLA or otherwise excused. While those facts are sufficient to survive summary judgment as to an FMLA claim, as discussed above, they have no connection to her gender. There is no evidence that male employees' requests for FMLA leave were treated differently. Plaintiff's bare allegation that she was discriminated against based on her gender is not enough, without supporting evidence, to show gender discrimination.

Finally, in her response brief, plaintiff suggests that her gender only has to be a "motivating" factor in ConAgra's treatment of her vis-à-vis Mr. Lane [Doc. 56 at p. 24, n.5]. The "motivating factor" language comes from the mixed-motive theory of discrimination claims, codified at 42 U.S.C. § 2000e-2(m), where a plaintiff can demonstrate that "an illegitimate discriminatory animus factored into the defendant's decision." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 401 (6th Cir. 2008); *see Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012) (a mixed-motive analysis applies to cases "where an adverse employment decision was the product of a mixture of legitimate and illegitimate motives") (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003)). While the plaintiff need not "eliminate or rebut all the possible legitimate motivations of the defendant," *White*, 533 F.3d at 401, a mixed motive claim "does require *some* evidence of discriminatory bias that has some connection

31

to the adverse employment action." *Lopez v. Am. Family Ins. Co.*, 618 F. App'x 794, 800 (6th Cir. 2015) (emphasis in original). The Court notes that plaintiff has not pled a mixed motive claim in her complaint, nor has she argued such in opposition to the defendant's summary judgment motion aside from her cursory footnote. More importantly, however, plaintiff has presented no evidence that her gender played any role in ConAgra's decision to terminate her. Accordingly, to the extent that such a theory has been presented, the Court finds that it also falls short.

The defendant's motion for summary judgment will be granted as to plaintiff's Title VII claim.

## V.    Conclusion

For the reasons set forth herein, the defendant's motion for summary judgment [Doc. 41] will be **GRANTED in part and DENIED in part**. An appropriate order will be entered.

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE